J OHNSON, C. J.
1. As to the right of the administrator to sell the mortgaged premises in fee in order to reach the value of the equity of redemption, when the same is needed to pay debts.
The statute expressly authorizes such a sale, and provides for adjusting prior liens, whether by mortgage or otherwise. The residue, after satisfying such liens, becomes assets in the administrator’s hands. The power not only is conferred, but a duty is imposed, to reach the interest of the decedent in lands, whether that interest be of a legal or equitable nature. The administrator is the trustee in that behalf for the unsecured creditors, and if he neglects to perform his duty, a court of equity will intervene, at the instance of creditors, for- the purpose of reaching such assets. McDonald v. Aten, 1 Ohio St. 293.
The statute does. not confer upon the probate court the power to sell the land subject to existing liens.
The provisions of this statute, as to the estate subject to sale (Rev. Stats. § 6139), who are the proper parties to the proceeding, including heirs, mortgagees and other lien-holders (Rev. Stats. § 6142),’ making it the duty of the court to determine priorities (Rev. Stats. §§ 6145 to 6148), requiring an appraisement of the land at its true value in money. (Rev. Stats, § 6155), requiring a sale at not less than two-thirds of such appraisement, if improved, or one-half if unimproved (Rev. Stats. § 6160), providing for a deed .to the purchaser which will vest the title in him in like manner as if con *56 veyed by deceased in bis lifetime (Rev. Stats. § 6163), and inquiring the payment of all mortgage, or other liens, according to their priorities, as well as costs, expenses and compensation for making the sale (Rev. Stat. § 6165), preclude the idea of' a sale of a mere equity of redemption.
In Baird v. Kirtland, 8 Ohio, 21, and Seymour v. King, 11 Ohio, 342, and other cases, it was settled that this could not be done on execution, because the law required an ap-praisement of the fee at its value in money, and a sale of that at two-thirds of the appraisement.
Por like reason, if for no other, the same is true here. But it is obvious there is, if anything, a stronger reason, and that is, that a sale of the fee is of more advantage' to the estate, while at the same time it fully protects the lienholders.
2. Can the executor or administrator acquire a lien on the purchase money prior to that of a mortgagee ?
Revised Statutes section 6165 provides for the application of the money arising from the sale of real estate to pay debts of decedent, as follows:
“ First. To discharge the costs and expenses of the sale, and the per centum and charges of the executor or administrator thereon for his administration of the same.” If therefore a case is made which authorizes such sale, the statute controls the matter, and gives such priority. We must not be understood as holding that sucha proceeding can be prosecuted by the personal representative, for the mere purpose of earning commissions, when the probability is that the land will not pay the liens. In the case at bar the property was appraised at $6,000. Had it sold for that amount, it would have realized about $1,500 to the estate, after satisfying all prior liens. Apparently,.therefore, it was for the interest of the estate, with no detriment to the lienholders, to have it sold ; and we do not hesitate to say that the administrator would have failed in his duty had he neglected to reach this interest, when there was an admitted necessity for so doing. If he acted in good faith, and it is not pretended but he did, there is no good reason why he should not be compensated as the statute directs.
But it is claimed, that this compensation should fall on the *57 personal estate, where the liens are not satisfied. We do not assent to this view. Every lienholder, holds the same, subject to the costs and expenses of enforcing the same. When the property is insufficient to pay in full, the mortgagee’s share is so much the less. These costs and expenses are to be first paid. If there is not sufficient to pay them, and his lien in full, his unsatisfied claim remains as a debt of the mortgagor or judgment debtor. He acquired his lien subject to the provisions of the statute, authorizing such a sale. The same result would follow if the mortgagee had been foreclosing his own mortgage, the costs and expenses of making the sale must first be paid, including poundage, if he is not the purchaser, although the residue is insufficient to pay his lien. Indeed, this is but the application of a familiaj- rule in equity, that a trust fund is chargeable with all necessary expenses of administering it.
3. Can he charge a per centum on thq amount of the purchase money going to a lienholder who is the purchaser ?
We think not. Ilis per centum is to be computed on, “ the money arising from the sale,” for, “ his administration of the same.”
Where no money arises, to be administered, there is nothing on which to compute commissions. This percentage was intended to compensate for the trouble and responsibility of collecting and paying out the money. Longworth v. Piatt, 27 Ohio St. 183. Here the mortgagee is the purchaser, and so far as the purchase money was applicable to her liens, it operated as a satisfaction of her mortgages. As there was a judgment prior to her second mortgage, it, as well as the costs, expenses and compensation should be first paid, and the balance should be applied on the second mortgage of the plaintiff in error.
Whatever deficiency there is must fall on the junior lien-holder. The court therefore erred, in taxing Mrs. Xing with a jpro rata share of the commissions. It also erred in computing a per centum commission on the amount of the purchase money to be applied on the mortgages to plaintiff in error.
4 Again, we think the court erred in computing commis *58 sions on the amount for which the land sold, to wit, six per centum on the first thousand dollars, and four per centum on the balance, as graduated by Rev. Stat. § 6188, without any regard to the amount of the personal estate collected and accounted for.
Section 6165, does not specify the amount of commissions, nor the rate for fixing them. This is prescribed by section 6188, which governs as to both real and personal estate, taken together.
This latter section provides as full compensation for ordinary services, by commissions on “ the amount of the personal estate collected and accounted for, and on the proceeds of real estate sold, as follows : ■ For the first thousand dollars, at the rate of six per centum; for all above that sum, and not exceeding five thousand dollars, at the rate of four per centum ; and, for all above five thousand dollars, at the rate of two per centum.” It further provides for a just and reasonable allowances for actual and necessary expenses and for extraordinary services.
These sections should be construed together. The aggregate amounts from personal and real estate, should form the basis of the graduated rate per centum of commission. They do not warrant a graduation on each separately, and giving the highest rates on each.
Neither do they authorize the higher rates against the real estate incumbered by liens, at the expense of such liens when there are personal assets. The personal assets are liable for the payment of costs, expenses and compensation for administering the same, and this burden cannot be shifted to the real estate. It is the primary fund for the payment of these charges, as well as of debts.
Assuming as the record shows, that there was about $1,100 of personal assets, they are properly chargeable with the higher rate. And the amount necessary to be paid, by the purchaser who owned the prior mortgage, to pay the costs and Mrs. King’s judgment, is the money realized on the sale, to be administered, and this, being less than $5,000 in the aggregate, should have been charged at four per cent.
*59 5. The record shows that no money was actually paid on the King judgment, but she accepted in lieu of money the purchaser’s note and mortgage on the land. This was a side arrangement by which her debt against the estate was thus paid with the assent of the administrator. It was equivalent to his receiving the amount, paying it to her in satisfaction of the judgment, and a loan by Mrs. King to the purchaser. It was in lien of the distribution made by the court to pay this judgment, and was, we think, part of the proceeds of the sale administered upon by the administrator.

Judgment reversed, and cause remanded.